NOT DESIGNATED FOR PUBLICATION

No. 124,760

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the
LINK ZWEYGARDT TRUST NO. 1.

MEMORANDUM OPINION

Appeal from Cheyenne District Court; SCOTT SHOWALTER, judge. Opinion filed December 2, 2022. Affirmed.

*Charles A. Peckham*, of Brown, Creighton & Peckham, of Atwood, for appellant Juhnia Zweygardt.

*Jerry Fairbanks*, of Fairbanks Kling Law, P.A., of Goodland, for appellee Deborah Crites.

Before GARDNER, P.J., WARNER and COBLE, JJ.

PER CURIAM: Link Zweygardt named his wife, Juhnia Zweygardt, a co-trustee of the Link Zweygardt Trust No. 1. After his death, the other co-trustee brought an action to remove Juhnia as co-trustee because of her handling of trust funds. The district court removed Juhnia as a trustee. She appeals, but finding no abuse of discretion, we affirm.

*Factual and Procedural Background*

Link and Juhnia Zweygardt married and had two sons, now adults. In 2000, Link executed the Link Zweygardt Trust No. 1. Link, a farmer, set up that trust to continue his farming operation and to provide for his beneficiaries. The trust contains about $2,385,000 in assets, most of which are nonliquid.

1

When Link died in October 2014, the trust became irrevocable. The trust divided its assets into a marital share and a nonmarital share. And in accordance with federal tax law at the time of Link's death, only the nonmarital share of the trust—the family trust—was funded. The beneficiaries of the family trust are Juhnia and the couple's two sons. The family trust considers Juhnia the primary beneficiary, stating: "In making distributions under this Article, my Trustee shall give consideration first to the needs of my wife and only thereafter to the needs of my descendants and the remainder beneficiaries."

Upon Link's death, per the trust's designations, Juhnia became a co-trustee and Link's cousin, Deborah Crites, became the independent co-trustee. Section 9.03 of the trust provides that the independent trustee may distribute income and principle to any of the beneficiaries of the trust as the independent trustee considers advisable "for any purpose." Upon Juhnia's death, the principal and any undistributed income will be divided into two separate trusts, one for each son.

In 2018, part of the farm was sold to pay a debt accumulated during Link's lifetime. This left $112,048.34 in the trust's checking account. Thereafter, Juhnia withdrew and used, without Crites' knowledge, $104,161.34 of these funds for her personal expenses—more money than she had a right to receive that year from the trust. She then apparently left the country for a time. Once Crites discovered the money was missing, she objected to the distribution of the funds, and she and Juhnia—the two trustees—arrived at a settlement. Juhnia agreed the trust could withhold 30% of the annual distributions she would otherwise receive until she repaid the excess funds she had taken.

In 2020, the Farm Service Agency (FSA) deposited $9,917.83 in Juhnia's account, rather than in the trust account. That deposit was later repaid to the trust by withholdings from Juhnia's 2020 trust income distribution.

In May 2021, FSA made another deposit for $3,948.40 in an account controlled by Juhnia, rather than in the trust account. When Crites contacted FSA to tell them to deposit funds into the trust account rather than into Juhnia's personal account, FSA responded that because Juhnia's name was listed as the first trustee she had the right to change the autopayments to her own account, so it would keep depositing payments into Juhnia's account until they had a court order showing otherwise. It is unclear from the record on appeal whether this 2021 deposit into Juhnia's personal account was repaid to the trust.

In February 2021, Crites filed an action to remove Juhnia as trustee. The parties submitted findings of fact and conclusions of law to the district court for its review. Based on those submissions, the district court removed Juhnia as a trustee. In so doing, the district court found that Juhnia, as trustee, had mishandled trust funds in 2018, in 2020, and in 2021. It found that Juhnia's mishandling of funds in 2020 and 2021 "was a blatant violation of her fiduciary duty and made it very clear that she is not willing to abide by her duties of fiduciary. Given this second chance, she again took trust funds for her personal use for which she did not have authority." The district court held that "Crites as independent trustee is the only one who can make that decision to distribute funds to Juhnia." The district court ruled that Juhnia was to remain the primary beneficiary of the trust, but that "Juhnia Zweygardt has failed to carry out the duties of trustee and has abused her fiduciary duties by making distributions of income and principal repeatedly herself." As a result, the district court removed Juhnia as trustee, finding such action "necessary and appropriate."

Juhnia timely appeals.

*Did the District Court Abuse Its Discretion by Removing Juhnia as Trustee?*

The heart of this appeal asks whether the district court properly removed Juhnia from her position of co-trustee. We review this question for an abuse of discretion.

3

*Jennings v. Murdock*, 220 Kan. 182, 211, 553 P.2d 846 (1976); *In re Bradley Trust*, 60 Kan. App. 2d 66, 74, 490 P.3d 51 (2021); see K.S.A. 58a-706(b) (stating a "court may remove a trustee" in some cases).

A district court abuses its discretion if its action stems from an error of law or fact or is otherwise arbitrary, fanciful, or unreasonable, which is another way to say that discretion is abused where no reasonable person would take the view adopted by the trial court. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018); *Empire Mfg. Co. v. Empire Candle, Inc.*, 273 Kan. 72, 87, 41 P.3d 798 (2002). Juhnia, as the party asserting error, bears the burden of showing the district court abused its discretion. See *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017). This panel reviews the district court's findings of fact for substantial competent evidence. See *In re Hjersted Revocable Trust*, 35 Kan. App. 2d 799, 804, 135 P.3d 192 (2006). But our review of the district court's legal interpretation of the trust, as well as any statutory interpretation, is unlimited. See *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019) (statutes); *Hemphill v. Shore*, 295 Kan. 1110, Syl. ¶ 2, 289 P.3d 1173 (2012) (trusts).

Juhnia's brief raises two arguments:  (1) "Did the district court properly apply existing statutory and case law to the petition to remove the trustee designated by the settlor of the trust?"; and (2) "Did the district court abuse its discretion in taking the drastic action of totally removing the respondent, who was appointed by the settlor, as trustee given the weight given to the settlor's choice of trustee?" Because these arguments trigger the same standard of review and challenge the same action by the district court, we address them as one issue—whether the district court abused its discretion by removing Juhnia as trustee.

The Kansas Uniform Trust Code (KUTC) controls the operation of trusts in this state. See K.S.A. 58a-101 et seq. K.S.A. 58a-706(b)(1) provides that a court may remove a trustee if "[t]he trustee has committed a breach of trust." A "breach of trust" is a

"violation by a trustee of a duty the trustee owes to a beneficiary." K.S.A. 58a-1001(a); see *Roenne v. Miller*, 58 Kan. App. 2d 836, 850, 475 P.3d 708 (2020).

The primary goal of the KUTC is to carry out the intent of the settlor. *In re Bradley Trust*, 60 Kan. App. 2d at 75. So to determine whether Juhnia committed a breach of trust as a trustee, this panel must determine the settlor's (Link's) intent for the management of the trust. When, as here, the trust language is plain and unambiguous, the settlor's intent is shown in the language it uses. *Hemphill*, 295 Kan. at 1118.

Section 9.03 of the trust gives the independent trustee exclusive discretion over distribution of the trust's income and principal:

> "My Independent Trustee may distribute as much of the income and principal of the Family Trust to the Family Trust beneficiaries as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute as much income and principal to the Family Trust beneficiaries as my Trustee determines necessary or advisable for their health, education, maintenance and support."

Consistently with that provision, Section 16.08(k) of the trust limits the power of the interested trustee: "Whenever a power or discretion is granted exclusively to my Independent Trustee, then any Interested Trustee who is then serving as my Trustee is prohibited from participating in the exercise of the power or discretion."

In this same section, the trust defines "Independent Trustee" as "any Trustee who is not an Interested Trustee as defined [by this trust]." The trust defines "Interested Trustee" in Section 16.08(m), in part, as a trustee who "is a transferor or beneficiary." Under these definitions, Juhnia is an interested trustee because she is both a beneficiary of the trust and a trustee; Crites is an independent trustee because she is not a beneficiary of the trust.

5

The trust thus gave Crites exclusive power or discretion to make distributions from the trust and gave Juhnia none. The plain language of the trust shows that Link, as the settlor, did not want his beneficiaries involved in the distribution of the income or principal of the trust.

True, the trust shows that Link's primary concern and objective is to provide for Juhnia's well-being. Yet Juhnia has not shown that Crites' distributions failed to meet that goal. But even had Crites failed to meet that goal, Juhnia's option was not self-help or making distributions to herself, as the trust places discretionary limits on that support and prevents Juhnia from making distributions to herself, as stated in Sections 9.03 and 16.08(k).

We agree with Juhnia that the removal of a trustee is a drastic action, especially where, as here, the settlor specifically named the trustee. See *Simpson v. Kansas Dept. of SRS*, 21 Kan. App. 2d 680, 688, 906 P.2d 174 (1995) ("The powers of the courts to remove a trustee are limited and can be utilized only in extreme circumstances."); Restatement (Third) of Trusts, § 37, comment (f) (2003) ("Ordinarily, a court will not remove a trustee named by the settlor upon a ground that was known to the settlor at the time the trustee was designated."). Yet just as drastic is Juhnia's disregard for the terms of the trust not once, but three times. As discussed above, the trust specifically prohibited her, as an interested trustee, from making distributions of income and principal from the trust to herself. Nevertheless, she did so in 2018 when she withdrew nearly all the proceeds of the trust's sale of a piece of real estate, and in 2020 and 2021 when she directed the FSA to deposit trust funds into her personal account.

Juhnia argues that the district court abused its discretion because her acts were less egregious than acts by trustees in other cases who were not removed. She cites *In re Bradley Trust*, 60 Kan. App. 2d 66. In that case, the Court of Appeals declined to overturn the district court's refusal to remove co-trustees who made several self-serving

6

and unsecured loans to themselves and their closely held companies, totaling about $220,000, and made a loan to a friend, which was not fully repaid to the trust. 60 Kan. App. 2d at 69-70. The district court held that although the co-trustees may have made mistakes, it was unnecessary to remove them as trustees because the trust was a family trust and one of the trustees, who was one of the original trustees named by the settlor, had served as trustee for over 51 years. 60 Kan. App. 2d at 77-78.

But the district court based its conclusion in *Bradley* on the language of the trust, as we do. The *Bradley* trust provided that co-trustees had the discretion to make loans as investments to the trust so long as they were "'the best loan[s] to make.'" 60 Kan. App. 2d at 78. And the trust language allowed the co-trustees to make investments using "'their best judgment.'" 60 Kan. App. 2d at 78. Not so here. The language that Link put in his trust prevents Juhnia, as a co-trustee, from making any distributions to herself. Nothing in the Bradley trust prohibited the co-trustees from doing what they did.

The language of Link's trust stated that an interested trustee such as Juhnia could not distribute the trust's income and principal to the beneficiaries, and it restricted that task exclusively to the trust's independent trustee, Crites. As both a trustee and a beneficiary, under the definitions provided in the trust, Juhnia was an interested trustee. Her withdrawal of the funds from the real estate sale and her directing of FSA payments to her personal account distributed funds from a trustee (herself) to a beneficiary (also herself). These acts were prohibited by the trust. And although Juhnia repaid most of this money, she showed a pattern of disregard for the boundaries set by the trust in her role as an interested trustee.

As stated, Juhnia bears the burden to show an abuse of discretion in the district court's order, and that requires a showing that there was an error of fact or law or that *no* reasonable person would take the action of the district court. See *Biglow*, 308 Kan. at 893; *Gannon*, 305 Kan. at 868; *Empire Mfg. Co.*, 273 Kan. at 87. "'When considering

7

whether a district court decision is an abuse of discretion, we do not look to see whether any other decision would have been reasonable too. Our task is merely to ask whether a reasonable person could agree with the decision that the district court made.'" *In re Bradley Trust*, 60 Kan. App. 2d at 80 (quoting *State v. Tidwell*, No. 120,230, 2019 WL 3210427, at *2 [Kan. App. 2019] [unpublished opinion], *rev. denied* 312 Kan. 901 [2020]). We find no legal or factual error, and a reasonable person could agree with the decision of the district court, even if another decision was also reasonable. Thus, we find no abuse of discretion in the district court's decision to remove Juhnia as a trustee.

Affirmed.